UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| BRITTANY MILLER | CIVIL ACTION NO. 10-537 |
|---|---|
| VERSUS | JUDGE TRIMBLE |
| NATURAL RESOURCES RECOVERY, LLC, OVERTON POLYGRAPH and WOODY OVERTON | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are motions to dismiss filed by each of the defendants in the above-captioned case. The first motion is filed on behalf of defendant Natural Resources Recovery, LLC ("NRR") and the second is filed on behalf of defendants Overton Polygraph and Woody Overton ("Overton").[1] For the reasons expressed below, the court finds both motions to dismiss should be granted in part and denied in part.

I.  BACKGROUND

Plaintiff Brittany Miller ("Miller" or "Plaintiff") was employed by NRR on May 24, 2010 when an unspecified amount of cash went missing from the NRR cash box.[2] Miller alleges that she learned of the missing money from a coworker on that day and, thereafter, traveled to NRR's main office and personally notified senior management and NRR owner, Sid Brian, of the situation.[3] After a scheduled staff meeting, plaintiff contacted local law enforcement and

---
[1] R. 6, 13.
[2] R. 1-1 at ¶ 4.
[3] Id. at ¶ 5.

1

reported the missing money.[4] Further investigation of the apparent theft was postponed until May 31, 2010, when NRR's more senior office manager returned from her vacation.[5]

Plaintiff alleges that she and two fellow employees, all of whom had access to the cash box in question, were called into the office to give their statements concerning the missing money on May 31, 2010.[6] Plaintiff further alleges that, on that date, she was asked by an NRR office manager "about her willingness to participate in and cooperate with a polygraph examination."[7] Plaintiff did not refuse the polygraph examination and was informed, at about 3:00 p.m. that same day, that her examination would be conducted the following day at 4:00 p.m. at NRR's main office.[8]

Plaintiff was present at 4:00 p.m. the following day and participated in a polygraph examination administered by defendant Overton, owner of Overton Polygraph.[9] Plaintiff alleges that her examination commenced at approximately 7:00 p.m. because plaintiff was the last of the three employees to be examined.[10]

Plaintiff alleges that, after the examination was concluded, Overton advised her that "her responses to his questions were analogous to, among other things, the responses he had seen from 'serial killers,' that she 'blew the charts out of the water,' and that she had notably failed the examination."[11] In response, plaintiff "immediately requested a second examination,

---

[4] Id. at ¶ 6.
[5] Id. at ¶ 7.
[6] Id. at ¶ 8.
[7] Id. at ¶ 9.
[8] Id. at ¶ 9-10.
[9] Id. at ¶ 11-12.
[10] Id. at ¶ 11.
[11] Id. at ¶ 13.

2

convinced that material errors or defective equipment were present during the examination."[12] Plaintiff asserts that Overton denied her request since she had "'clearly failed.'"[13]

Plaintiff alleges that, after denying her request for reexamination, Overton "then summoned the senior management that was present, including the office manager and the controller of NRR, and communicated the results of his examination."[14] Plaintiff claims that she was contacted at her home at approximately 10:00 p.m. on the same day by NRR's office manager and instructed to report to NRR's main office the following day, rather than her usual duty station. Plaintiff further claims that this office manager advised that "'...you could have been arrested because you failed and convicted...'"[15] The next morning, plaintiff alleges that she received another call from NRR's office manager instructing her that she was no longer to report to NRR's main office and that, instead, she was suspended with pay from her employment because of the results of the polygraph.[16] Plaintiff claims that the office manager further relayed that plaintiff would be updated as to any final decision on her employment after NRR deliberated further.[17]

Plaintiff alleges that she was visited by this officer manager on Thursday, June 3, 2010 and that, during this visit, the office manager confiscated her office keys, work mobile phone and work laptop computer and instructed her to report to NRR's main office at 5:00 p.m. that day for a meeting to include plaintiff, the office manager and NRR Chief Financial Officer Pat Pettijohn.[18] Plaintiff attended the meeting and claims that, during the meeting, she was offered the option of either resigning and collecting unemployment benefits or participating in a second

---

[12] Id. at ¶ 14.
[13] Id. at ¶ 14.
[14] Id. at ¶ 15.
[15] Id. at ¶ 16.
[16] Id. at ¶ 17.
[17] Id. at ¶ 17.
[18] Id. at ¶ 18.

3

polygraph examination with the caveat that, should she fail the second examination, she would be immediately fired, but, should she pass, she would be reinstated to her former position.[19] Plaintiff alleges that she was told to locate a new polygraph examiner and schedule an examination to take place no later than Monday, June 7, 2010.[20] Plaintiff asserts that she chose to submit to a second examination, rather than resigning. Plaintiff claims that, at this meeting, she was also informed that her suspension with pay was being converted to a suspension without pay and that such conditions would continue until her successful completion of the polygraph examination, at which time she would either be fired or reinstated.[21]

Plaintiff alleges that, thereafter, she contacted James Richard Johnson, III ("Johnson") of Louisiana Polygraph Services in an effort to schedule her second polygraph examination. Johnson allegedly explained to plaintiff that he had already been contacted by NRR on May 31, 2010 and asked to conduct the first employee polygraph examinations, which offer he declined based upon his opinion that the examinations proposed by NRR violated the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. § 2001, et seq.[22] Based upon this conversation, plaintiff asserts that she declined to schedule or participate in a second polygraph examination and, after reporting this decision to NRR, was placed on indefinite suspension without pay.[23]

Plaintiff filed suit against defendants NRR, Overton and Overton Polygraph ("Overton defendants") on or about July 13, 2010 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana.[24] Plaintiff's suit asserts claims against defendants "either individually, collectively, in solido, jointly and severally, or in any combination therewith, or

---

[19] Id. at ¶ 19.
[20] Id. at ¶ 20.
[21] Id. at ¶ 20.
[22] Id. at ¶ 21.
[23] Id. at ¶ 22.
[24] R. 1-1, generally.

behaving as independent actors" for violation of the EPPA, intentional infliction of emotional distress, wrongful termination in violation of public policy, defamation and "other acts or omissions governed by La. C.C. Art. 2315, et seq."[25]

NRR's motion to dismiss asserts that plaintiff's suit should be dismissed for failure to state a claim as to which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). More specifically, NRR argues that the facts alleged by plaintiff, when taken as true, do not give rise to liability on its part. Similarly, Overton and Overton Polygraph's motion, also filed pursuant to Fed. R. Civ. P. 12(b)(6), asserts that neither Overton as an individual, nor Overton Polygraph, may be held liable under the EPPA and that these defendants are immune from liability as to plaintiff's other claims.

The court, having received all necessary briefs, finds the matter ripe for decision.[26]

## II. APPLICABLE STANDARD

A motion to dismiss one or more claims pursuant to Fed. R. Civ. P. 12(b)(6) asserts that the facts alleged by plaintiff, when taken as true for the purposes of the motion, do not demonstrate a legally cognizable claim for relief under applicable law. A court considering the merits of a motion to dismiss must view plaintiff's suit only from the vantage point of plaintiff's pleadings and may not resort to extraneous evidence such as would be relied upon in a summary judgment proceeding.[27] Examining the pleadings, the court will construe all well-pled factual allegations as true and will not grant the motion to dismiss unless it appears that plaintiff can prove no set of facts, consistent with the allegations of the complaint, which would entitle him to

---

[25] Id. at ¶ 24.
[26] This case was transferred to the docket of the undersigned on or about January 10, 2011. While it remains lodged in the Middle District of Louisiana, it is governed by the Local Rules of the Western District of Louisiana, as expressed in the court's order of January 12, 2011 [R. 29, 30]. The court notes that no courtesy copies of any motion, response or reply were forwarded to the chambers of the undersigned and, as such, the parties did not adhere to Western District Local Rule 7.1.
[27] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496 (5th Cir. 2000); Spivey v. Robertson, 197 F.3d 772 (5th Cir. 2000).

5

relief under applicable law.[28] The court will not, however, accept bare assertions devoid of factual allegations and representing no more than a recitation of the statutory or jurisprudential elements of a claim or legal conclusions presented as factual allegations.[29]

IV. ANALYSIS

A. Plaintiff's claims under the EPPA

NRR asserts that plaintiff has failed to allege a violation of the EPPA. Specifically, NRR points out that plaintiff's own complaint confesses that she consented to the first polygraph examination and even requested the second examination. NRR asserts that the EPPA "does not state that it is illegal for an employee to request to take a polygraph test."[30] NRR concludes that plaintiff's complaint does not allege that she was compelled or required to submit to a polygraph examination.[31]

The court finds this argument to be wholly without merit. As argued by plaintiff, Section 2002 of the EPPA provides, in part, that

> ...it shall be unlawful for any employer...
>
> (1) directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test...[32]

Plaintiff's complaint clearly alleges that she and two other employees were asked to submit to polygraph examinations by an NRR office manager.[33] The statutory language clearly prohibits an employer from requesting that an employee submit to a polygraph

---

[28] In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007); Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005); Jones v. Greninger, 188 F.3d 322 (5th Cir. 1999); Baker v. Putnal, 75 F.3d 190 (5th Cir. 1996).
[29] Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278 (5th Cir. 1993); Campbell v. Wells Fargo Bank, N.A., 781 F.2d 440 (5th Cir. 1986).
[30] R. 6-1 at p. 5.
[31] Id. at p. 6.
[32] 29 U.S.C. § 2002.
[33] R. 1-1 at ¶ 9.

examination. Although it is equally clear that, once asked, plaintiff did give her consent to the examination, NRR cites no authority for its assertion that such consent absolves an employer of its liability for the initial request. The court's own research revealed no Fifth Circuit jurisprudence reaching that conclusion. We also note that the EPPA, containing several exceptions to its general prohibition of employer-requested/-required polygraph examinations, does not contain an express exemption in cases where an employee consents to an employer's prohibited request.

NRR next asserts that its use of polygraphs in conjunction with an ongoing investigation of an apparent theft of cash at its office falls within the express exemption of Section 2006(d) which provides, in part, that the EPPA does not prohibit an employer from requesting that an employee take a polygraph examination when

> (1) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage;
>
> (2) the employee had access to the property that is the subject of the investigation;
>
> (3) the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation;
>
> (4) the employer executes a statement, provided to the examinee before the test, that –
>
>> (A) sets forth with particularity the specific incident or activity being investigated and the basis for testing particular employees,
>> (B) is signed by a person (other than the polygraph examiner) authorized to legally bind the employer,

(D) contains at a minimum –

    (i) an identification of the specific economic loss or injury to the business of the employer,
    (ii) a statement indicating that the employee had access to the property that is the subject of the investigation, and
    (iii) a statement describing the basis of the employer's reasonable suspicion that the employee was involved in the incident or activity under investigation.[34]

While the facts alleged by plaintiff clearly demonstrate that NRR's polygraph request occurred during its investigation of the apparent theft of cash from its premises, that plaintiff had access to the cash at issue and that NRR possessed a reasonable suspicion that plaintiff may have been involved in the theft, these circumstances are insufficient to bring the polygraph examination at issue within the ambit of the exemption cited above. Subsection (d)(4) requires that the employer execute a written statement containing certain prescribed elements. Plaintiff's complaint alleges that the polygraph examination administered at NRR's request was administered in violation of the EPPA. As pointed out by plaintiff, it is incumbent upon NRR to demonstrate that the examination at issue falls within the exemption. NRR does not assert that it issued the required written statement. Accordingly, the court rejects NRR's argument as to the Section 2006 exemption.

Similarly, Section 2007 requires that any polygraph examination, even those as to which the Section 2006 exemption applies, must be administered in such a way as to respect certain rights of the examinee. Specifically, Section 2007(b)(2)(A) requires that the examinee is "provided with reasonable written notice of the date, time, and location of the test, and of such

---

[34] 29 U.S.C. § 2006(d).

8

examinee's right to obtain and consult with legal counsel or an employee representative before each phase of the test[.]" Additionally, Section 2007(b)(2)(B) requires that the examinee receive written notice of the nature and characteristics of the instruments to be used in the examination. Section 2007(b)(2)(D) requires that the examinee be read and sign a written statement informing the examinee

(i) that the examinee cannot be required to take the test a condition of employment,
(ii) that any statement made during the test may constitute additional supporting evidence for the purposes of an adverse employment action described in subsection (a) of this section,
(iii) of the limitations imposed under this section,
(iv) of the legal rights and remedies available to the examinee if the polygraph test is not conducted in accordance with this chapter, and
(v) of the legal rights and remedies of the employer under this chapter (including the rights of the employer under section 2008(c)(2) of this title)[.]

Finally, Section 2007(d)(2)(E) provides that the examinee must have an opportunity to review all questions that will be asked during the test and informed of the right to terminate the test at any time.

Again, plaintiff's complaint alleges that the polygraph examination at issue was administered in violation of the EPPA. While NRR argues for the application of the exemption, it does not assert that, were this court to apply the exemption argued, the polygraph examination would otherwise be in compliance with the law cited above. Accordingly, we find that the requirements of Section 2007 provide further support for this court's decision to reject NRR's dismissal argument on the basis of exemption.

NRR's final argument with respect to plaintiff's EPPA claim is that plaintiff is unable to demonstrate that she was de facto terminated from her employment and, for that reason, states no

9

claim under the EPPA. Plaintiff's complaint alleges that she was placed on indefinite suspension without pay following Overton's notice to NRR that plaintiff failed the first polygraph examination and that NRR instructed her that such status would continue until she either (1) resigned with the opportunity to collect unemployment benefits or (2) submitted to a second polygraph examination, the failure of which would result in her immediate termination.

The EPPA makes it unlawful for "any employer" to "discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action against...any employee or prospective employee who refuses, declines, or fails to take or submit to any lie detector test..."[35] Given the factual allegations of plaintiff's complaint, the court finds that plaintiff clearly states a claim under Section 2002(3)(A) of the EPPA. NRR cites no authority for its conclusory argument that indefinite suspension without pay does not amount to termination under applicable law and jurisprudence. Accordingly, the court rejects this argument.

The Overton defendants also filed a joint motion to dismiss plaintiff's EPPA claims against them on the basis that neither Overton, the polygrapher, nor Overton Polygraph, the business entity hired by NRR to conduct polygraph examinations, may be deemed an "employer" within the meaning of the EPPA.[36] Plaintiff responds by pointing out that in <u>Calbillo v. Cavender Oldsmobile, Inc.</u>,[37] the Fifth Circuit instructed that a polygraph examiner may be considered an employer for purposes of the EPPA, depending upon the role the examiner played in the employer's compliance with the EPPA.[38]

The EPPA defines "employer" as

---

[35] 29 U.S.C. § 2002(3)(A).
[36] R. 13 at pp. 7-9.
[37] 288 F.3d 721 (5th Cir. 2002).
[38] R. 18 at pp. 2-4.

any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee. A polygraph examiner either employed for or whose services are otherwise retained for the sole purpose of administering polygraph tests ordinarily would not be deemed an employer with respect to the examinees.[39]

Plaintiff's complaint alleges that the Overton defendants conducted the polygraph examination at issue and also alleges it was conducted in violation of the EPPA.[40] As expressed by the Fifth Circuit in Ackerson v. Bean Dredging, LLC,[41] the relevant inquiry is what has been alleged and not whether or not plaintiff has demonstrated sufficient evidence to succeed on the merits of the claim. We concur with plaintiff's argument that, based on Calbillo, whether or not the Overton defendants may be deemed employers under the EPPA requires a factual inquiry beyond the scope of the pleadings. We find, however, that plaintiff's allegations are sufficient under the notice pleading requirements of Fed. R. Civ. P. 8(a) to apprise these defendants of the nature of the claims against them under the EPPA. We also find that, given the potential for a finding of employer status as to the Overton defendants, plaintiff has, indeed, stated a claim against them as to which relief may eventually be granted by this court.

**B.  Plaintiff's Louisiana law claims for defamation**

NRR's motion next asserts that plaintiff's Louisiana law defamation claim should be dismissed because plaintiff does not plead facts that give rise to such a claim. Specifically, NRR argues that the only allegation in plaintiff's complaint that can be construed as alleging defamation is plaintiff's allegation that an NRR office manager told her that she "...could have been arrested because you failed and convicted..."[42]

---

[39] 29 U.S.C. 2001(2); 29 C.F.R. § 801.2(c) (2001).
[40] R. 1-1 at ¶¶ 12, 13,
[41] 589 F.3d 196, 209 (5th Cir. 2009) quoting Ferrer v. Chevron Corp., 484 F.3d 776, 782 (5th Cir. 2007).
[42] R. 1-1 at ¶ 16.

Louisiana law requires that a plaintiff alleging defamation demonstrate: (1) defamatory words, (2) an unprivileged communication to a person other than the one being defamed, (3) falsity, (4) actual or implied malice and (5) resulting injury.[43]

NRR further points out that plaintiff's complaint alleges that the NRR office manager who allegedly made the comment at issue made the comment at plaintiff's home and to her directly. NRR argues that, under these facts, plaintiff fails to allege that the office manager made a defamatory statement to anyone "other than the party defamed" as required by the operative statute.

Plaintiff's memorandum in opposition argues that her complaint clearly alleges that "subordinate employees [were] present during all stages of the investigation/examination conducted by Overton" and that plaintiff believes that NRR and its officer manager broadcast defamatory information about plaintiff to her fellow employees.[44]

The court has carefully reviewed plaintiff's complaint and finds that plaintiff fails to allege facts in support of her purported defamation claim against NRR. Plaintiff's complaint does not allege that NRR's office manager made her comment concerning plaintiff's failure of the exam and of the potential for her arrest and conviction to anyone other than the plaintiff. Plaintiff's complaint also fails to allege that the office manager repeated that comment to anyone other than plaintiff. Plaintiff's suspicions, expressed only in her memorandum in opposition to the pending motion, are insufficient to support this claim. Accordingly, we do not find that the facts as alleged state a claim for defamation against NRR.

The court also finds that plaintiff's defamation claims against the Overton defendants must fail. Louisiana law does not prohibit the administration of polygraph examinations and,

---

[43] Trentecosta v. Beck, 703 So.2d 552 (La. 1997); Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196 (La. 1980);
[44] R. 17 at pp. 9-11.

therefore, any communication of the results of such examination by Overton to the requesting employer would constitute a privileged communication.[45]

## C. Plaintiff's retaliation claims

The motions filed by NRR and the Overton defendants assert that plaintiff has failed to state a claim for retaliation. Section 2002(3) and (4) of the EPPA provide that it is unlawful for an employer to "discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any action against, any employee or prospective employee" because an employee refuses to take a polygraph examination or institutes a suit or other proceeding based on rights secured by the EPPA.[46]

Plaintiff's complaint clearly alleges that NRR has placed her on indefinite suspension without pay because of her alleged failure of a polygraph examination and her decision not to submit to a second polygraph examination.[47] As discussed above, the court finds that NRR is certainly an "employer" under the EPPA and also finds that plaintiff has sufficiently stated a viable claim against the Overton defendants under the EPPA by virtue of jurisprudence suggesting that such defendants may be deemed "employers" under certain circumstances. Given these prior conclusions, we find that plaintiff has stated claims as to which relief may be granted against all defendants and, for that reason, the motions should be denied as to plaintiff's retaliation claims.[48]

---

[45] Thibodeaux v. Southwest Louisiana Hosp. Ass'n., 488 So.2d 743 (La. App. 3 Cir. 1986) (qualified privilege attached to polygrapher's communication of hospital employee's examination results).
[46] 29 U.S.C. § 2002(3) – (4).
[47] R. 1-1 at ¶¶ 19-20.
[48] NRR's motion asserts that plaintiff fails to state a claim under Title VII of the Civil Rights Act of 1964. The court notes, however, that we find no claim under Title VII by plaintiff and plaintiff does not argue in favor of any such claim.

### D. Plaintiff's claims for intentional infliction of emotional distress

NRR's motion asserts that plaintiff's only allegation in support of her claim for intentional infliction of emotional distress is that NRR contacted polygrapher Johnson prior to hiring Overton and stated that NRR's intention was to scare the alleged thief into admitting to the crime.[49] NRR asserts that this allegation is insufficient to state a claim for relief under Louisiana law. Quoting Landry v. AT&T Corporation, NRR asserts that plaintiff must allege conduct that is

> extreme and outrageous; that the emotional distress suffered by the Plaintiff was so severe and that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[50]

NRR denies that the conduct alleged by plaintiff meets this standard. The court agrees. The Louisiana Supreme Court, in White v. Monsanto Co., held that a cause of action for intentional infliction of emotional distress does not lie for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[51] The court also ruled that the standard of conduct necessary to constitute intentional infliction of emotional distress is so abhorrent that, in the context of the workplace, such a claim generally only applies to "a pattern of deliberate, repeated harassment over a period of time."[52]

Although, as explained above, plaintiff has clearly alleged that NRR knowingly violated the EPPA, plaintiff does not allege the type of conduct referenced in White. Thus, even if the facts alleged by plaintiff are taken as true, plaintiff has not pled facts that would entitle her to

---

[49] R. 36 at p. 5.
[50] Id. quoting 1998 WL 28230 (E.D. La. 1998).
[51] 585 So.2d 1205, 1209 (La. 1991).
[52] Id. at 1210.

relief as to this particular claim. For that reason, the court finds that NRR's motion to dismiss should be granted as to plaintiff's purported claim for intentional infliction of emotional distress.

Similarly, we find that the conduct by the Overton defendants as alleged by plaintiff fails to conform to the standard enunciated by the Louisiana Supreme Court and, for that reason, fails to state a claim as to which relief may be granted by this court. For that reason, we find that the Overton defendants' motion to dismiss should be granted as to plaintiff's purported intentional infliction of emotional distress claim.

### E. Plaintiff's claims for wrongful termination in violation of public policy

NRR's motion asserts that plaintiff has failed to plead facts in support of this claim and, further, did not oppose the dismissal of such claim in its opposition to NRR's motion. The court has examined plaintiff's complaint and concurs on the basis that plaintiff cites no statutory or jurisprudential origin for such a claim and, further, fails to address any such claim in its brief in opposition. We find that, given the vagueness of this purported claim, it should be dismissed pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6).

The Overton defendants also urge dismissal of plaintiff's identical claims against them. Again, plaintiff does not address such claims in her memorandum in opposition to the Overton defendants' motion and the court can find no factual allegations regarding public policy, other than plaintiff's allegation that she was discharged in violation of the EPPA, which we will preserve for further proceedings as explained above. Accordingly, we find that plaintiff's purported claims for wrongful termination in violation of public policy against the Overton defendants should be dismissed.

### F. Plaintiff's "other acts and omissions" claim under La. Civ. C. Art. 2315

NRR's motion asserts that plaintiff has failed to make factual allegations in her complaint in support of a general negligence claim under Art. 2315. Specifically, NRR points out that plaintiff does not allege facts pertinent to the duty/risk analysis required for a finding of negligence under Louisiana law.

Plaintiff does not directly address the elements of duty/risk[53] in her opposition and, again, does not elaborate on her vague purported claim for negligence. Similarly, plaintiff fails to cite any Louisiana law or jurisprudence concerning employer duty relative to polygraph examinations.

In Johnson v. Delchamps, Inc.,[54] the Fifth Circuit considered a plaintiff's claim for wrongful termination based on the results of a polygraph examination. The court, citing Louisiana's at-will employment status, found that an employer may dismiss an at-will employee based on the results of a polygraph examination and, further, that an employer has a legitimate interest in controlling theft of its assets such that the use of polygraph examinations was not an abuse of right in that case.[55]

Given the lack of factual allegations to support plaintiff's purported negligence claim against NRR under Louisiana law, we find that such claim should be dismissed. Similarly, we find that such claims against the Overton defendants should be dismissed.

---

[53] In order to prove liability under La. Civ. C. Art. 2315, plaintiff must demonstrate the following elements: (1) defendant's duty toward plaintiff, (2) defendant's breach of that duty, (3) defendant's breach was cause-in-fact of plaintiff's injuries, (4) defendant's conduct was the legal cause of plaintiff's injuries and (5) plaintiff incurred actual damages as a result of the breach. Roberts v. Benoit, 605 So.2d 1032 (La. 1991).
[54] 897 F.2d 808 (5th Cir. 1990).
[55] Id. at 811.

### G. Overton defendants' request for reasonable attorney fees and costs

The motion to dismiss filed by the Overton defendants also requests an award of reasonable attorney fees and costs pursuant to Section 2005(c)(3) of the EPPA. The Section cited by defendants allows, at the court's discretion, for an award of reasonable costs and attorney fees to the prevailing party in any action under the EPPA. The Overton defendants have not prevailed entirely on their motion to dismiss and, accordingly, we find such an award to be inappropriate. Defendants' motion for attorney fees and costs will be denied.

## IV. CONCLUSION

The court has carefully examined plaintiff's complaint in light of the motions to dismiss filed by all defendants in this case. We find that, viewing the allegations of plaintiff's complaint in the light most favorable to her, the motions to dismiss filed by NRR and the Overton defendants should be denied as to plaintiff's claims for unlawful administration of a polygraph examination by an employer, unlawful employment discrimination based on the results of the examination and retaliation by the employer for plaintiff's exercise of her rights under the EPPA. We find that defendants' motions to dismiss should be granted in all other respects and that, accordingly, plaintiff's Louisiana law claims for intentional infliction of emotional distress, wrongful termination in violation of public policy, defamation and general negligence under La. Civ. C. Art. 2315 should be dismissed as to all named defendants in this case.

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
August 29, 2011

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE